UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ALVAH T. GILSON, )<br>)<br>   *Plaintiff* )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>*Acting Commissioner of Social Security*,[1] )<br>)<br>   *Defendant* ) | No. 1:12-cv-376-GZS |

### REPORT AND RECOMMENDED DECISION[2]

   This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the basis that the administrative law judge erroneously gave little weight to the residual functional capacity ("RFC") opinion of treating provider Daniel Gott, D.O., in part because she minimized the plaintiff's testimony regarding his subjective complaints of pain. *See* Statement of Errors (ECF No. 10) at 1-2. I find no error and, accordingly, recommend that the court affirm the decision.

   Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 11, 2013, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

requirements of the Social Security Act through September 30, 2009, Finding 1, Record at 12; that he had a severe impairment of degenerative disc disease of the lumbar spine, Finding 3, *id*.; that he retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a)[3] except that he required a sit/stand option at will, was capable of sitting for 30 minutes at a time, and was capable of performing work tasks in either the sitting or standing position, could never climb ladders, ropes, or scaffolds, could only occasionally climb ramps or stairs, and could only occasionally balance, stoop, kneel, crouch, and crawl, Finding 5, *id*. at 13; that, considering his age (35 years old, defined as a younger individual, on his alleged disability onset date), education (high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 16; and that he, therefore, was not disabled from November 20, 2005 (his alleged date of onset of disability) through the date of the decision (December 23, 2011), Finding 11, *id*. at 17-18.[4] The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id*. "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id*. The full range of sedentary work entails standing and walking for a total of no more than about two hours in an eight-hour workday and sitting for about six hours in an eight-hour workday. Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2013) ("SSR 96-9p"), at 154.

[4] Although, for purposes of the plaintiff's application for SSD benefits, he was required to demonstrate that he was disabled on or before his date last insured, September 30, 2009, SSI benefits are not tied to a claimant's date last insured. *See Splude v. Apfel*, 165 F.3d 85, 87 (1st Cir. 1999) ("In 1972, Congress added a new social security program to provide 'supplemental security income' (called 'SSI') for 'aged, blind and disabled' persons of limited means regardless of their insured status. This is a social welfare program funded out of general taxpayer revenues. SSI is available even to those who qualify for SSD, but SSD income is considered in determining whether a disabled person qualifies for SSI under the latter's means test.") (citations omitted); *Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) ("To be eligible to receive SSD benefits the plaintiff had to have been disabled on or before her date last insured (March 31, 1995); however, eligibility for SSI benefits is not dependent on insured status.").

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, the question of a claimant's RFC is among issues reserved to the commissioner, with respect to which even the opinion of a treating source is entitled to no "special significance" and cannot be assigned controlling weight. *Id.* §§ 404.1527(d)(2), 416.927(d)(2); Social Security Ruling 96–2p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2013) ("SSR 96–2p"), at 112.

When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[5] An administrative law judge may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing. *See, e.g., id*. ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2013) ("SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2013) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not required. *See, e.g., Golfieri v. Barnhart*, No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

An administrative law judge has discretion to resolve conflicts among expert opinions by according great weight to the opinion of a nonexamining state agency physician. *See, e.g., Shaw v. Secretary of Health & Human Servs*., No. 93-2173, 1994 WL 251000, at *4 (1st Cir. June 9, 1994) ("The regulations do not require a particular view of the evidence, but leave ambiguities and inconsistencies to be sifted and weighed by the ALJ [administrative law judge], who may, as here, use a consultative examination to help resolve uncertainties. The ALJ must evaluate all

---

[5] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e*., whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant or others. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

medical opinions from all sources in light of a non-exclusive list of possibly relevant factors. While generic deference is reserved for treating source opinions, the regulations also presuppose that nontreating, nonexamining sources may override treating doctor opinions, provided there is support for the result in the record.") (citations omitted); *Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").

In assessing the plaintiff's RFC, the administrative law judge had the benefit of three expert opinions: that of Dr. Gott, dated December 1, 2011, and those of nonexamining agency consultants Donald Trumbull, M.D., dated October 23, 2009, and Robert Hayes, D.O., dated March 24, 2010. *See* Record at 411-28, 523-27.

Based upon review of then-available medical records, including then-available records of Dr. Gott, Drs. Trumbull and Hayes found the plaintiff capable of lifting and/or carrying up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday. *See id*. at 412, 421. Drs. Trumbull and Hayes also found the plaintiff capable of occasionally climbing ramps/stairs, never climbing ladders/ropes/scaffolds, frequently balancing, and occasionally stooping, kneeling, crouching, and crawling. *See id*. at 413, 422.[6]

By contrast, Dr. Gott indicated, *inter alia*, that the plaintiff could sit or stand/walk for less than two hours in an eight-hour workday, walk only one to two city blocks without rest or severe pain, sit for 30 minutes at a time before needing to get up, stand for only 10 minutes at a time

---

[6] There are differences between the RFC opinions of Drs. Trumbull and Hayes as to whether the plaintiff had restrictions on the use of his left upper extremity stemming from carpal tunnel syndrome. *Compare* Record at 412, 415 *with id*. at 421, 424. However, those differences are immaterial. The administrative law judge identified no upper extremity impairment, *see* Finding 3, *id.* at 12-13, and the plaintiff has not challenged that conclusion, *see generally* Statement of Errors.

before needing to sit or walk around, required a job that permitted shifting positions at will from sitting, standing, or walking, would frequently need to take unscheduled breaks lasting from five to 10 minutes during a workday, could occasionally lift less than 10 pounds, rarely lift 10 pounds, and never lift 20 pounds or more, could rarely twist, bend, crouch, or climb stairs and never climb ladders, and was likely to be absent from work more than four days per month as a result of his impairments or treatment. *See id.* at 524-26.

The administrative law judge gave substantial weight to the opinions of Drs. Hayes and Trumbull, reasoning:

> Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions. The State agency medical consultants provided specific reasons for their opinions about the [plaintiff's] residual functional capacity showing that these opinions were grounded in the evidence of record, including careful consideration of the objective medical evidence and the [plaintiff's] allegations regarding symptoms and limitations.

*Id.* at 15.

She gave little weight to the opinion of Dr. Gott (mistakenly referred to as "Dr. Golf"), reasoning:

> In this opinion, Dr. Golf alleged the [plaintiff] has significant limitations in prolonged sitting, standing and walking and would require frequent unscheduled breaks. He stated the [plaintiff] experiences side effects of sedation and judgment impairment from his medication. Additionally, he noted that the [plaintiff] would likely miss more than four workdays per month as a result of his impairment. The basis for the opinion was reported to be the [plaintiff's] chronic lumbar degenerative disc disease and low back pain. This opinion is unsupported by the treatment records, the medical evidence generally and the testimony of the [plaintiff]. As noted above, the [plaintiff] is able to ambulate effectively and heel toe/walk with little difficulty. Further, the [plaintiff] testified that he is capable of a wide array of activities indicative of a functional ability above that assessed by his treating physician. The [plaintiff] is still able to engage in self-care activities, tend to household chores and care for his children. Therefore, the evidence does

      not support any limitation beyond a restriction to sedentary exertion, as noted above.

*Id*. (citation omitted).

      The plaintiff contends that this rationale does not withstand scrutiny in that the medical records and his hearing testimony support, rather than undermine, his claim. *See* Statement of Errors at 6-8. I find no error.

      The administrative law judge supportably deemed the Gott opinion inconsistent with the medical evidence of record, including Dr. Gott's own treatment notes. In those notes, which span the period from March 10, 2008, to August 15, 2011, Dr. Gott frequently noted that the plaintiff (i) was able to ambulate with little or no difficulty, (ii) was stable, or doing reasonably well from a pain perspective, on medication, and/or (iii) was generally able to perform his daily activities, *see, e.g.*, Record at 449, 452, 454, 456-58, 466, 491, 500, 504, 506, 514, although there are indications of occasional painful flare-ups, *see, e.g., id.* at 460 (slow ambulation), 462 (back pain flare-up lasting two weeks), 468 (slow ambulation), 493 (slow ambulation).

      Progress notes of other treating providers, as well, reasonably can be viewed as inconsistent with the Gott opinion, for example, notes of "pain clinic" physician Peter G. Arabadjis, M.D. *See, e.g., id*. at 358-59 (plaintiff walked with normal gait and cadence, was able to rise on his toes and heels without significant difficulty, had full range of lumbosacral motion in both flexion and extension without significant exacerbation of pain, and was able to squat, rise, and stand on a single foot bilaterally without difficulty), 365 (plaintiff walked with normal gait and cadence), 367 (plaintiff had symmetric loss of stretch reflex in quadriceps, medial hamstrings, and gastrocnemius muscles bilaterally but walked with normal gain and cadence and was able to walk on his toes and heels and arise from a squat without significant difficulty).

As the administrative law judge also noted, *see id*. at 14, MRI studies on January 28, 2006, June 7, 2007, and January 16, 2008, revealed disc protrusion at L3-L4, L4-L5, and L5-S1 without significant canal or foraminal stenosis, *see id*. at 223-28.[7] On February 1, 2011, Dr. Gott described the plaintiff's low back pain as "[s]table structurally without changes." *Id*. at 456.

While, as the plaintiff points out, *see* Statement of Errors at 5, he regularly sought treatment from both primary care providers and specialists for his back condition, he was noted on several occasions to have discontinued or refused therapies beyond the prescription of pain medication. *See, e.g., id*. at 253-54, 322-23, 335, 337, 343. The administrative law judge reasonably found that this called into question his allegation of back pain of a disabling level of severity. *See id*. at 14.

The administrative law judge also generally accurately summarized the plaintiff's testimony and written report as to his daily activities. *Compare id*. at 15 *with id*. at 43-44, 186-88. The plaintiff argues that she minimized his testimony, *see* Statement of Errors at 6-8, pointing out that he had also:

1. Testified regarding his functional restrictions, for example, that he (i) sometimes is incapacitated by back spasms that last 20 minutes or more, (ii) has to lie down once a day for 15 minutes, (iii) can walk one to two blocks, (iv) can stand for approximately five to 15 minutes and sit for only 10 to 30 minutes at a time, and (v) can lift and carry no more than 10 pounds, *see id*. at 6-7; Record at 38-41, and

---

[7] The administrative law judge described the later MRI studies as revealing that the plaintiff's disc protrusion was "essentially unchanged[.]" Record at 14. The administrative law judge is not an expert in these matters, and it is not clear that her characterization is correct. The January 16, 2008, MRI study noted the "[i]nterval development of a large disk extrusion at L3-L4, early subligamentous, and resulting in mild to moderate spinal canal stenosis without foraminal stenosis[,]" as well as "[m]ild left foraminal narrowing . . . at L4-L5 secondary to left central disk protrusion." *Id*. at 228. Nonetheless, any error is harmless. Even taking into account the MRI studies, the two agency experts, Drs. Trumbull and Hayes, found the plaintiff to have a greater functional capacity than the administrative law judge did. *Compare* Finding 5, *id*. at 13 *with id*. at 412-13, 421-22.

8

2. On cross-examination, qualified his ability to perform certain daily activities, stating that bending to do dishes caused back pain and that he prepared simple dinners usually warmed by microwave, *see* Statement of Errors at 7; Record at 45-46.

Nonetheless, the administrative law judge was not obliged to credit the entirety of the plaintiff's testimony. She reasonably concluded that his testimony as to his normal daily activities indicated a greater functional ability than he indicated he possessed or than Dr. Gott found. *See, e.g., Teixeira v. Astrue*, 755 F. Supp.2d 340, 347 (D. Mass. 2010) ("That Teixeira claims to have had assistance from her older daughters in completing . . . household work and that she often takes breaks does not prevent the hearing officer from using the testimony of Teixeira's daily activities as one factor in assessing credibility.")

The plaintiff also protests that a claimant's ability to perform useful functions does not equate to an ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. *See* Statement of Errors at 8. Nonetheless, the administrative law judge did not base her RFC determination on the plaintiff's activities of daily living. Rather, she took those activities, and other evidence of record, into account in assessing his credibility and permissibly resolving a conflict between the RFC opinion of Dr. Gott and those of Drs. Trumbull and Hayes. As his counsel acknowledged at oral argument, the plaintiff does not contest that the Trumbull and Hayes RFC opinions can stand as substantial evidence of the plaintiff's RFC.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

9

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of September, 2013.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge